UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
LYNN MARIE D., :
 :
                 Plaintiff, :    **MEMORANDUM &**
 :    **ORDER GRANTING**
 :    **THE MOTION TO**
   -against- :    **AFFIRM DECISION OF**
 :    **THE COMMISSIONER**
COMMISSIONER OF SOCIAL SECURITY, :    **OF SOCIAL SECURITY**
 :
                Defendant. :    3:23-CV-595 (VDO)
------------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Lynn Marie D.[1] seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Social Security Disability Insurance ("SSDI") under the Social Security Act ("SSA"). She moved to reverse the Commissioner's decision (ECF No. 20), and the Commissioner moved to affirm. (ECF No. 26.)

For the following reasons, Plaintiff's motion is denied and the Commissioner's motion is granted.

**I.**    **BACKGROUND**

The Court assumes familiarity with Plaintiff's medical history, as summarized in Plaintiff's Motion (ECF No. 20 at 1-5),[2] which the Court adopts and incorporates by reference.

---

[1] Plaintiff is identified by her first name and last initial pursuant to the District's January 8, 2021 Standing Order. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).
[2] Which the Commissioner also is "generally satisfied with and adopts." (ECF No. 26-1, at 3.)

Plaintiff applied for SSDI under Title II of the SSA for a disability starting February 28, 2020. (Certified Administrative Record ("R."), at 16.[3]) She alleged disability due to generalized anxiety disorder, rheumatoid arthritis, sciatica, major depressive disorder, and hypertension. (R. at 66.) Administrative Law Judge ("ALJ") Dierdre Horton held a hearing on her request on November 10, 2021. (R. at 16.) She issued a decision on November 29, 2021 denying the request on behalf of the Commissioner. (R. at 13-35.) Despite finding that Plaintiff had severe physical impairments and nonsevere impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work under 20 C.F.R. 404.1567(b). (R. at 23-29.) This RFC included Plaintiff's previous work as a secretary. (R. at 29.)

The ALJ ultimately determined that Plaintiff did not qualify as disabled based on the RFC and denied her SSDI. (*Id.*) The Appeals Council denied Plaintiff's request to review the ALJ's decision on March 23, 2023. (R. at 1.)

Plaintiff sought review in this Court on May 8, 2023 under 42 U.S.C. § 405(g). (ECF No. 1.) She moved to reverse the Commissioner's decision on October 6, 2023. (ECF No. 20.) The Commissioner moved to affirm on November 30, 2023. (ECF No. 26.) Plaintiff replied to the Commissioner's motion on December 14, 2023. (ECF No. 27.)

## II.     LEGAL STANDARDS

"Congress has authorized federal courts to engage in limited review of final SSA disability benefit decisions." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022); *see also* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the

---

[3] "R." refers to the Certified Administrative Record filed at ECF No. 15. The pagination refers to the pagination on the bottom right-hand corner of the record, as opposed to the ECF pagination.

record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Therefore, a court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted). "'Substantial evidence' is evidence that amounts to 'more than a mere scintilla,' and has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Id.*

To be disabled, thus qualifying a claimant to benefits, a claimant must be unable "'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(a)). In determining whether a claimant is disabled, "the agency follows a five-step process detailed in 20 C.F.R. § 404.1520(a)(4)(i)–(v)." *Schillo*, 31 F.4th at 70.

> Under the five-step process, the Commissioner determines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments; (3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of her

3

past relevant work; and (5) whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience.

*Id.* (citing 20 C.F.R. § 404.1520(a)(4)(i)–(v)). The Commissioner considers whether "the combined effect of all [] impairments . . . would be of sufficient severity" to establish eligibility for Social Security benefits. 20 C.F.R. § 404.1523. While the finding of whether a claimant is disabled is reserved for the SSA, the SSA must consider an opinion provided by a claimant's treating physician and then draw its own conclusions as to whether the data in that opinion indicate disability. *Schillo*, 31 F.4th at 70 (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

## III. DISCUSSION

Plaintiff raises two arguments in seeking to reverse: 1) "[t]he ALJ failed to consider [Plaintiff's] mental limitations when formulating [her] RFC"; and 2) "[t]he ALJ's evaluation of [Dr. Preston's] medical opinion did not comply with controlling law." (Pl.'s Mot., ECF No. 20, at 2.) The Court takes each in turn.

### A.  The ALJ's Determination of the RFC

Plaintiff first disputes whether the ALJ considered her mental limitations when formulating the RFC. (ECF No. 20 at 7.) More specifically, Plaintiff contends that the ALJ failed to consider those limitations at Step Two of the five-step analysis. *Id.*

ALJs formulate RFCs as an expression of what a claimant *may* be able to do, given their limitations. 20 C.F.R. § 404.1545(a)(1). Such a determination is within an ALJ's discretion, and it is their job to weigh the evidence. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). Federal courts defer to the ALJ's decision so long as it is reasonable. *Id.* "An RFC finding is administrative in nature, not medical, and its determination is within the province of

the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order); *see also* 20 C.F.R. § 404.1546(c); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). While an ALJ need not discuss each and every bit of evidence that comes before her, she must articulate the rationale behind the RFC throughout the decision as a whole. *Schillo*, 31 F.4th at 78. Relevant here, an ALJ must consider non-severe impairments that, in the aggregate, may amount to a severe impairment if a severe impairment is not found. *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012). Finally, an ALJ must consider functional restrictions that stem from any limitations, including mild limitations, in formulating the RFC. *See, e.g.*, *Beliana M. C. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00464 (SALM), 2022 WL 596045, at *9 (D. Conn. Feb. 28, 2022). The ALJ is not, however, required to incorporate functional restrictions into the RFC unless they exist due to those limitations. *Id.*

Plaintiff argues that the ALJ in this case failed to consider or address her mental impairments when creating the RFC. She contends that the ALJ should have included limitations within the RFC to reflect those impairments, and that, at minimum, the ALJ should have "further explain[ed]" why those mild limitations did not lead to limitations in the RFC. (Pl.'s Mot. at 9-10.)

As the Commissioner notes, the ALJ explicitly stated that she considered Plaintiff's mental impairments in creating the RFC. (Def.'s Mot., ECF No. 26, at 6.) The decision states early on:

> In order to determine the claimant's [RFC], the undersigned considered the functional limitations resulting from all of her medically determinable impairments, including the non-severe impairments . . . . However, the evidence does not support a finding of any additional functional limitations other than those included in [the RFC finding].

5

(R. at 22.) Moreover, the ALJ considered the impairments throughout the decision. During the ALJ's Step Two analysis, she relied on the medical findings of two state psychological consultants, Dr. Robert Decarli and Dr. Christopher Leveille (R. at 69-70, 78), who both found that Plaintiff lacked *severe* impairments and had no more than mild limitations. (R. at 21.) The ALJ further emphasized Plaintiff's treatment course and lack of abnormalities, which she used to find that Plaintiff did not have more than mild limitations on her ability to work. (R. at 21.) Given Plaintiff's testimony and that of her doctors regarding her daily tasks, the ALJ determined that Plaintiff's limitations seemed more physical than mental, and that she could even control her own finances. (*Id.*) *See, e.g.*, *Laney v. Colvin*, No. 14-CV-836S, 2016 WL 519037, at *5 (W.D.N.Y. Feb. 10, 2016) (affirming that mental impairments were nonsevere after an ALJ cited that a plaintiff's activities were "limited by his physical, rather than mental, condition"). The record thus shows that the ALJ properly considered the evidence and each of Plaintiff's non-severe impairments in the aggregate, even if she did not recite and review every scintilla of it, during the Step Two analysis. It further supports that the ALJ conducted the Step Two analysis in a manner free from legal error.

At Step Four, which involves determining whether a claimant's RFC prevents their doing previous work, the ALJ also considered Plaintiff's mental impairments. *MacDonald v. Comm'r of Soc. Sec.*, No. 17-CV-921, 2019 WL 3067275, at *3 (W.D.N.Y. July 11, 2019) (holding that "if the ALJ determines that a claimant's medically determinable mental impairments are not severe, [s]he must further consider and discuss them as part of [the] analysis at step four") (internal quotations omitted). In adjudicating Step Four, the ALJ noted Plaintiff's conservative treatment course, which involved psychiatric medications and no recommendation for any higher level of care, not even for a therapist. (R. at 26, 602.) Finally,

6

the ALJ looked to Plaintiff's previous work as a secretary and determined that her mild limitations would not impair those functions. (R. at 29-30.) And even if this Court were to read the record in this case differently than the ALJ—for example, if the Court thought that Plaintiff's discussion with her primary care provider about therapy (R. at 602) constituted seeking mental health treatment—the ALJ's understanding of the evidence here is reasonable enough to afford the deference required by law. *McIntyre*, 758 F.3d at 149.

In short, the ALJ in this case conducted a reasonably thorough review of the record that properly considered Plaintiff's mental health impairments. The Court does not seek to downplay Plaintiff's impairments or suggest that her claim is entirely meritless. That is not the standard. Precedent and record evidence dictate that, because the ALJ conducted a thorough, careful review supported by substantial evidence, her opinion should be affirmed.

    **B.**    **The ALJ's Evaluation of Dr. Preston's Opinion**

Plaintiff next argues that the ALJ improperly evaluated the expert opinion of Dr. Erin Preston, who examined her mental status on December 7, 2020. (R. at 473.) The ALJ evaluated Dr. Preston's opinion and found it contained "some persuasiveness" and was supportable, but was not fully consistent with other evidence in the record. (R. at 28-29.) Plaintiff contends that the ALJ did not fully explain which evidence contradicted Dr. Preston's opinion. (Pl.'s Mot. at 10.)

ALJs must evaluate all medical opinions and previous administrative medical findings when conducting a disability analysis and formulating an RFC. 20 C.F.R. § 404.1520c. These evaluations are not deferrals and ALJs are not to give controlling weight to them. 20 C.F.R. § 404.1520c(a). ALJs are instead instructed to evaluate the persuasiveness of the opinions based on five factors, including the supportability and consistency (with the rest of the record) of the

7

opinion. 20 C.F.R. §§ 404.1520c(b)(2), (c)(1), (c)(2). The ALJ's evaluation is to be explained in detail. *Id*. at § (b)(2).

The ALJ in this case, after reviewing Dr. Preston's opinion, articulated that the opinion had "some persuasiveness." (R. at 28.) After discussing its supportability, the ALJ turned to the opinion's consistency. (*Id*.) The ALJ first explained that Dr. Preston's assessment that Plaintiff had no limitations—in recall, performing simple tasks, relating to others, responding to supervision, or tolerating stress—was consistent with other evidence in the record. (R. at 28-29.) These conclusions were consistent, the ALJ found, with other record evidence. (R. at 28.) The ALJ then explained that Dr. Preston's assessment that Plaintiff had a mild limitation maintaining a schedule, as well as a moderate limitation performing complex tasks, were inconsistent with other evidence presented by experts. (*Id*.) In support of that finding of inconsistency, the ALJ noted Plaintiff's above-mentioned treatment course and other expert opinions regarding her mental status. (R. at 29.) The ALJ further explained that Dr. Preston's opinion was "based on a one-time examination," which left her without "the benefit of treating [Plaintiff's] mental impairments." (R. at 28.) Given the availability of expert opinions more in touch with the treatment of Plaintiff's mental conditions, the ALJ found Dr. Preston's opinion inconsistent with the record. (R. at 29.)

Plaintiff, unfortunately, sees the ALJ's consistency analysis as little more than a recitation of "magic word[s]." (Pl.'s Mot. at 11.) She argues that the ALJ did not articulate a reasonable-enough basis to find Dr. Preston's opinion only of "some persuasiveness." (*Id*.) She further claims that the ALJ cited no contradictory evidence to point out Dr. Preston's inconsistency. (*Id*.) As the reader can see from the above paragraph, however, that is inaccurate. Moreover, a review of the ALJ's evaluations of the other expert opinions, most of

8

which the ALJ found unpersuasive, reveals that the ALJ went into similar levels of depth and analysis with each. (R. at 26-29.) Yet Plaintiff only takes issue with the ALJ's consistency analysis of Dr. Preston's opinion. The ALJ's opinion is supported by substantial evidence and is therefore reasonable.

Finally, Plaintiff contends that the ALJ's alleged misevaluation of Dr. Preston's opinion negatively affected the formulation of her RFC. While the Court sympathizes with such an argument, the ALJ's findings are supported by substantial evidence and are free of legal error. That holding obviates the need to reevaluate the RFC, as the ALJ properly conducted the analysis here and factored the medical opinions appropriately.

## IV.     CONCLUSION

For these reasons, the Commissioner's motion to affirm the Commissioner's decision (ECF No. 26) is **GRANTED** and Plaintiff's motion to reverse the Commissioner's decision (ECF No. 20) is **DENIED**. The Clerk of the Court is directed to enter judgment in favor of the Commissioner and close the case.

**SO ORDERED.**

Hartford, Connecticut
July 16, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge